### G. W. DUKE v. THE STATE.

No. 15851.   Delivered June 14, 1933.
State's Rehearing Denied October 18, 1933.
Reported in 63 S. W. (2d) 552.

The opinion states the case.

*Butler, Price & Maynor,* of Tyler, for appellant.

*M. L. Molhusen,* Crim. Dist. Atty., of Longview, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is burglary; the punishment, 2 years in the penitentiary.

The state relied for a conviction solely upon evidence of possession by appellant of some of the fruits of the crime. A grocery house belonging to the Mayfield Grocery Company at Longview, Texas, was burglarized on or about the 19th day of September, 1932. It was entered somewhere between Saturday afternoon, when it was closed up, and the following Monday morning. The walls of the building were of sheet iron, the floor of the building being some distance from the ground, but the sheet iron on the walls extended entirely to the ground. An opening had been effected in the sheet iron by cutting into that part which extended below the floor, and under the building holes had been bored and planks sawed out in the floor. In this manner the entry was gained into the building. Some $1800 worth of merchandise was taken therefrom, consisting chiefly of cases of cigarettes, together with tobacco and some chewing gum and mints. There were tracks in and around the said building, but none of the state's witnesses were able to identify any of them. It was established by the state's witnesses that since such a large amount of merchandise was taken, it would have necessitated considerable time to have removed all of it from the building and would have required a truck to haul it away. It is also shown that the burglarized building had burglary alarms attached to all of the doors and windows, which could not be entered without setting off said alarms, and said burglary alarms could have been heard a number of blocks away.

Officers went to a tourist camp operated by the appellant at Arp in Smith county. They told the appellant that they desired to search his place for stolen property, not having any search warrant with them. The appellant told them to go ahead and make the search, and to search any place they cared to. The appellant was asked in which one of the 10 or 11 houses he slept, and he pointed it out to them. In turning up the mattress on the bed in the room where the appellant slept, the officers found some carpenter tools, consisting of a saw and a bit, and they also found a pair of snips which could be used in cutting tin or sheet iron. It was shown by experimenting with the bit that it would make the same kind of a hole that was made in the floor of the burglarized premises when the floor was sawed away, but it was also shown that the bit was an adjustable bit, that is, its diameter could have been lessened or extended. They also found in said room some 7 or 8 packages of cigarettes; but it was shown by the state's testimony that the packages of

cigarettes found in appellant's house at the time of the search by the officers were not part of the cigarettes taken in the burglary, and that the appellant had no cigarettes of the kind stolen in his room. They also found under said mattress some chewing gum and one package of mints, which one of the state's witnesses identified as having been taken from the burglarized premises. At the time the search began the appellant admitted his ownership of the tourist camp. On this property was a filling station in connection with which groceries and commodities of merchandise were handled in comparatively small quantities. From the evidence, however, it is shown to have been under the active control of R. D. Duke, a brother of the appellant, and his wife, who lived in said building and ran the filling station and grocery store. A case of cigarettes was found in the store part of the filling station with the name "Mayfield Grocery Company" stamped on it, which was identified by a state witness as having been taken from the burglarized premises. This was substantially all of the testimoney offered by the state.

A witness by the name of Vineyard, who lived at Arp and worked for the Arp Lumber Co., testified that he lived just across the street from appellant's premises; that he was a carpenter and he knew that the appellant did his own carpenter work and he knew that for a long time prior to the alleged burglary that he had seen the appellant with a pair of snips and saw him cutting some flashings to put over a window; that the appellant also had a saw corresponding to the saw found under the mattress and had other tools and he and appellant exchanged and loaned each other tools; that he knew that the appellant also had a bit which was an extension bit. He had been through appellant's tourist camp a number of times, and the appellant and a hired hand fixed and repaired whatever was necessary around the tourist camp, and the appellant had used the extension bit for boring holes through ceilings for pipes and electrical fixtures; the appellant having his own electric lighting system.

Other witnesses testified as to the appellant owning the tools and using them around the tourist camp. An employee who had been working for the appellant about 11 months testified that he placed the tools found under appellant's mattress and he did this to prevent them from being stolen by transients occupying the rooms and cabins in the camp.

Otto Duke, the younger brother of the appellant, testified that he had been sleeping in appellant's cabin and that he had

purchased the chewing gum and mints found by the officers under the mattress, and that he had placed them under the mattress so as to prevent people from getting them; that he had bought same from a salesman who came by the camp the day before the search was made.

Mrs. Rayford Duke testified that she and her husband, R. D. Duke, owned and ran the filling station and little grocery store connected therewith and they had been living and occupying said place for almost two years and the appellant had nothing to do with running the place; that he gave it to them and they had put an addition on the building in which they slept and ate. That the appellant did not get any of the profits out of anything they sold and had no interest in the merchandise therein. She testified further that a day or two before the search was made they bought the case of cigarettes, which had the Mayfield Co. brand on it, from a man driving a truck; that the man told them at the time they purchased it that he worked for the Mayfield Company and was selling it for them; that people were in the habit of coming by the station and selling things from trucks.

Appellant also used the testimony of his wife, which, if true, definitely establishes an alibi as being on his premises all of the time involved in the transaction. Appellant's tourist camp is shown to be about 35 or 40 miles from the place of the burglary. As to his being at said camp, other witnesses testified to seeing him there on Saturday, Saturday night, Sunday, and Sunday night.

There was no attempt on the part of the state to contradict or impeach any of the testimony offered by the appellant.

The possession of the property identified as having been taken from the burglarized premises was the only testimony that the state could in any way rely upon as showing that the appellant committed the burglary. The cigarettes found in his room were admitted not to be part of the stolen property. The chewing gum and mints were claimed by his younger brother, who stated that he had purchased them and placed them there. The case of cigarettes was found in the possession of appellant's brother, and it was shown by the uncontradicted evidence that the appellant's brother had the actual possession of the filling station and the grocery store connected therewith. The opinion is expressed that the evidence does not exclude every reasonable hypothesis except that of the guilt of the accused, which is necessary in order to sustain a conviction upon circumstantial evidence. Reed v. State, 113 Texas Crim. Rep., 412, 22 S. W.

(2d) 456, and authorities cited. To warrant an inference of guilt of theft from the circumstance of possession of recently stolen property, the state has the burden of showing the possession to have been personal, recent, and unexplained, and that such possession involved a distinct and conscious assertion of property by the appellant. Russell v. State, 86 Texas Crim. Rep., 609, 218 S. W., 1049, and authorities cited. See, also, Field v. State, 24 Texas App., 428. We do not believe that such possession is shown by the evidence in this case. We quote from Branch's Ann. P. C., sec. 1877, as follows:

"To sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him."

Believing the evidence insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state, through the criminal district attorney of Gregg county, has filed a motion for rehearing, the sole ground of which is thus stated, "Because the court erred in holding that the evidence in this cause was insufficient to sustain a conviction." Under previous holdings the motion appears to be entirely too general to call for consideration. See Singleton v. State, 20 S. W. (2d) 782; Cooper v. State, 98 Texas Crim. Rep., 446, 265 S. W., 894; Jordan v. State, 64 Texas Crim. Rep., 187, 141 S. W., 786. In our original opinion it was undertaken to analyze the evidence and state it in the most favorable light for the state, after which the conclusion was reached that it was insufficient. We discover no facts which were overlooked originally, and none are called to our attention in the motion.

The motion for rehearing is overruled.

*Overruled.*