## Lincoln Ekern v. The State.

No. 23535.  Delivered January 8, 1947.
Rehearing Denied March 12, 1947.
On Second Motion for Rehearing April 2, 1947.

320

*Clifford Braly* and *Curtis Douglass,* both of Pampa, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was indicted for an assault with malice with intent to murder Clarence Arnold and was by the jury convicted of such an assault and assessed a term of three years in the penitentiary.

The charging part of the indictment reads as follows:

"* * * that Lincoln Ekern on or about the 17th day of October, A. D., one thousand nine hundred and forty-five and anterior to the presentment of this indictment, in the County of Gray and State of Texas, did then and there unlawfully, with malice aforethought, shoot Clarence Arnold with a pistol, with the intent then and there to murder the said Clarence Arnold," etc.

Appellant claims that this terminology fails to allege an assault with intent to murder as contemplated by the statute. We are furnished, among other cases, with that of Cooper v. State, 143 S. W. 355, 60 Tex. Cr. R. 411, as authority for this contention. We are not impressed with the applicability of this

case to the matter here in question. In the Cooper case, it was held that although the accused was charged with an assault with intent to murder, the trial court therein charged the jury that "an assault becomes aggravated when committed with a deadly weapon under circumstances not amounting to an intent to murder or maim." Then follows an application of the law to the facts, still maintaining therein, in applying the reasonable doubt thereto, the phrase "to murder or maim." It was held in that case that the charge of an assault to murder did not include an assault to maim, and a reversal was ordered therein. No such complaint is made herein.

In the case of Perez v. State, 22 S. W. (2d) 309, we have an indictment in the same words as the one in the present case. Judge Christian, of lamented memory, wrote the original opinion in which he upheld the indictment, but made note therein that the same was not challenged until in a motion in arrest of judgment and pretermitted a discussion of the question because the matter had not been properly presented in a motion to quash. Judge Lattimore, writing on the motoin for a rehearing, upheld the indictment but advised an avoidance of leaving out the allegation of an assault in so many words, and said:

"We do not regard it as a strained construction to hold that an indictment, which charges that P shot O with malice aforethought and with an intent to kill him, charges an assault with intent to murder. The omission of the allegation that P made an assault upon O, and the omission of some description of the general character of the weapon used in so doing, is not to be commended but avoided."

Under our reasoning, we are impressed with the idea that when one is charged with unlawfully and maliciously shooting another with a pistol with intent to kill, these words of themselves import and carry with them a charge of an assault with intent to murder. An assault is defined by Art. 1138, P. C., as being the use of any unlawful violence upon the person of another with intent to injure him, and we believe that the charging portion of this indictment clearly charges such an action upon the part of the appellant.

Complaint is also made of the paragraph of the trial court's charge wherein there was presented the law of self-defense. It is said to be vague and confusing, and that it shifts the burden of proof to the appellant; also that it bases such defense on what the jury believed concerning the acts and demeanor of

the injured party at the time of the shooting rather than what the appellant reasonably believes at such time. While this paragraph does seem to be complicated to some extent, nevertheless, the testimony of appellant as to this defense was itself complicated, and was based on a long association and various transactions between himself and the injured person (his ex-stepson), and included, among other things, previous communicated threats, as well as domestic troubles, in addition to a plea of temporary insanity, and we confess our inability to see how such paragraph in such charge could very well be improved upon. It finally seems to convey to the jury that if they believed, or had a reasonable doubt thereof, that appellant reasonably *believed* that the injured person was making or about to make an attack upon him, as viewed from appellant's standpoint, and that he was in immediate danger of death or serious bodily injury, or if they had a reasonable doubt thereof, then they should acquit appellant. It only demanded that the jury believe, or have a reasonable doubt thereof, that appellant reasonably believed that such facts existed, and not the belief of the jury as to the facts themselves. Such being our view of the proper construction of this paragraph, we see no error manifested therein.

Paragraph 4 of the trial court's charge is attacked mainly upon the ground that in outlining the constituent elements of an assault with malice, as well as its punishment, the trial court failed to include therein the idea as conveyed by the phrase, "and not in his own self-defense", or words of like character. It is to be noticed that in Paragraph 3 of such charge, the careful trial court had given a charge on the offense of murder with malice, and there was included therein the idea of self-defense. Then immediately in the succeeding paragraph, he merely intended to and did call to the jury's attention the basic difference between an assault with malice and an assault without malice and the applicable punishment. Later on in the charge he followed this with a self-defense charge, unhampered with any further instructions, and authorized an acquittal under their belief, or a reasonable doubt thereof, in a certain belief upon appellant's part. The court cannot and is not required to charge all the law in each paragraph of his charge, but such charge should be taken and considered as a whole; and an ordinary jury is expected to and surely does take the charge as a whole and considers it as such. The phrase, "and not in self-defense", was not necessary in a presentment of the law. It was so held in Huntsman v. State, 143 S. W. (2d) 587; also in Griffin v. State, (our No. 23,405) not yet reported. (Page 28 of this volume.)

Bill of Exceptions No. 5 complains because of certain argument of the District Attorney in his closing address to the jury as follows:

"And if Blake was here, gentlemen, I will bet he would get on this witness stand and he wouldn't corroborate Lincoln Ekern that he told the defendant that Clarence Arnold had threatened Lincoln Ekern's life."

Immediately upon the making of such argument an objection was made thereto, and the trial court was requested to instruct the jury orally, as well as in writing, not to consider such remarks, at which time appellant's attorneys prepared such requested charge and the trial court at such time gave such requested charge to the jury; nevertheless appellant insists that such remarks were of such a flagrant, damaging and harmful nature that their withdrawal by the trial court could not remove the effect thereof upon the minds of the jury.

True it is that appellant had testified that Blake had told him that Clarence Arnold had threatened appellant's life; and it is also true that Arnold testified that he had talked to Blake, but that he had not threatened Ekern's life in such talk, and it is also true that Blake was not present at this trial. Nevertheless, we do not think that the offer of the State's Attorney to bet that Blake would not corroborate appellant's statement was the receipt of testimony from such attorney as to what Blake would swear, but was merely a statement of his lack of belief in the utterance of this threat, and we think that the trial court's prompt action in withdrawing such statement from the jury was proper and cured any error, if such there was.

Again, appellant complains relative to the remarks of the District Attorney in his closing argument to the jury as follows:

"It took him 16 months and seven days to get up the courage and some intoxicating liquor of some kind to do the infamous act that he did on the morning of October 17th, and a suspended sentence wouldn't reform Lincoln Ekern."

Also, "If this county is ready to underwrite such practices as this man indulged in, if you are willing to turn him a loose ---".

Whereupon, the appellant's attorney objected to such argument and prepared and presented to the trial court a written charge as follows:

"You will not consider the remarks of the State's Attorney in his closing argument to the Jury when he said:

" 'If this county is willing to underwrite such practices as to turn Lincoln Ekern a loose---.' "

This special charge was given to the jury by the careful trial court. We see no error shown in the statement, but think same to be an argument fairly deducible from the evidence. However, if error there be, then the court's prompt instruction should have been sufficient to cure the same.

Appellant pleaded self-defense, temporary insanity, and also filed a plea for a suspended sentence in the event of a conviction. It was shown by the State's testimony that appellant had married Arnold's mother and lived with her for a while; that there had been trouble and disagreement between appellant and Arnold, as well as Arnold's mother: that appellant was drinking on the day of the shooting. Therefore, we think the arguments complained of in Bill No. 4 just above discussed were legitimate deductions from the testimony.

Bill of Exception No. 3 is rather complicated and borders on multifariousness. It begins with the introduction of a letter written by appellant to Arnold's Commanding Officer in the Army, wherein, from the contents thereof the jury might have predicated a feeling of malice shown toward Arnold. In such letter complaint was made relative to Arnold having caused appellant considerable trouble and his desire to have Arnold move further away from Pampa or be discharged from the Army, and that appellant would see to it that Arnold would be re-committed to the New Mexico Prison to serve out a sentence therein. This letter was admitted by appellant to have been written by him. The State's Attorney then cross-examined appellant, over objections, as to his trouble with Arnold and Arnold's mother in which above letter he had stated that Arnold had caused dissension between appellant and Arnold's mother, who was then the wife of appellant. The District Attorney cross-examined appellant rather thoroughly relative to another woman having been the cause of the family trouble between appellant and Arnold's mother, the other woman being appellant's wife at the time of the trial. We think this testimony was admissible on cross-examination as to whether Arnold was the cause of the dissention in the marriage of appellant and Arnold's mother.

We think the State had the right to prove appellant's drunken condition, if it could do so, at or about the time of the shooting early in the morning thereof; and this disposes of Bill No. 6 as well as Bill No. 16.

Many further bills relate to the introduction of photographs of the car in which Arnold was sitting just before he was shot, as well as the surroundings at such time. These photographs were taken soon after the shooting and seem to fairly represent the surroundings to which the witnesses testified, and we see no reason why they should not have been admitted in evidence.

Again, complaint is made in Bill No. 17 of the testimony of Jeff Guthrie, when he testified as follows:

"On the morning of October 17, 1945, when I saw Lincoln Ekern, he was under the influence of liquor. The first thing he said to me, he said, 'I just shot and killed an ex-convict son of a bitch down here and I hope I did kill him.'"

It was shown that this witness saw appellant walk into the sheriff's office and he went in immediately behind him, and such statement was made by appellant. The witness then arrested Ekern as he said, "After I saw his condition, I wouldn't have permitted him to leave the office." It was also shown that after the shooting appellant immediately went to the sheriff's office and surrendered. It can be gathered from the facts that at the time this statement was made appellant was not under arrest, but such statement and his condition caused Officer Guthrie to arrest him. We think the statement was admissible as evidence of guilt and was not in violation of any legal right of appellant.

We have written upon this matter in line with the brief presented to us by appellant's attorneys. However, there are further bills of exception found in the record which are not argued in the brief. These further bills have also had our attention and are overruled.

The facts herein show a marriage between appellant and Mrs. Gertie Arnold, she having a son by a former marriage, who was Clarence Arnold. Clarence was a wayward boy and was sent to the penitentiary in New Mexico when he was 21 years of age. He and appellant did not get along very well. Clarence and his mother had some difficulties with appellant. Eventually appellant and his wife were divorced, and appellant married again. On October 17, 1945, appellant was suffering from an ulcerated tooth and jaw, and early in the morning he started to a neighbor's home. His car was giving him trouble near where Arnold and his wife were in a car, they having been visiting the mother. Appellant appeared suddenly at the side of the car in which Arnold was sitting and shot him with a

pistol. Ten wounds were inflicted on Arnold's body, although only about five shots were fired. However, Arnold recovered from these wounds. Appellant's defense was that he had been told that Arnold had threatened to kill him, and while having trouble with his car on the morning of the shooting, he saw Arnold get out of his car and start towards him. Thinking that Arnold was going to kill him, everything turned blank and he remembered no more for a short while.

We think that under these facts and the record presented to us, the jury were within their province when they found appellant guilty of an assault with intent to murder with malice.

Being of the opinion that no error is herein shown, the judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant's motion for rehearing was filed in this court on January 18, 1947, which was within fifteer days after the opinion of affirmance was handed down on January 8.

The first complaint urged is that this court erred in holding the indictment sufficient to charge the offense of assault with intent to murder because the word "assault" does not appear in the indictment. Appellant seems to think the omission renders the indictment bad as to "form." It occurs to us that if the word was necessary its omission was a matter of substance. The indictment either charged assault with intent to murder or it did not.

"The use of any unlawful violence upon the person of another with intent to injure him * * * is an assault and battery." Art. 1138 P. C. If one unlawfully and with malice aforethought shoots another with a pistol the violence is present, and if it is done with intent to murder the intent to injure is manifest. Although believing the present indictment sufficient we again suggest that it is always better for the pleader to follow approved forms, if for no other reason than to avoid questions from arising.

The second paragraph of the motion seeks a rehearing "Because the court erred in holding that *reversal* error was not *rejected* by the matters and things set out in defendant's bill of exceptions No. 2." Then follows the exact averment as to bills

of exception numbers three to eighteen, inclusive. We assume that appellant meant to say that "reversible error was not reflected." However, nothing further appears in the motion to point out wherein appellant thinks error was committed by this court. It is stated in the motion that a brief was being submitted which was adopted as a part of the motion. A brief and argument on two propositions was filed, but not until February 26, which was 48 days after the original opinion was released. To permit a brief or argument to be thus filed to preserve a point not properly raised in the motion which had been filed within the fifteen days would amount to a non-observance of the requirement that motions for rehearing must be filed within 15 days after the original opinion is released. See Jordan v. State, 64 Tex. Cr. R. 187, 141 S. W. 786; Cooper v. State, 98 Tex. Cr. R. 446, 265 S. W. 894; Estep v. State, 107 Tex. Cr. R. 538, 298 S. W. 283; Grant v. State, 105 Tex. Cr. R. 193, 287 S. W. 254; Duke v. State, 124 Tex. Cr. R. 454, 63 S. W. (2d) 552; Singleton v. State, 20 S. W. (2d) 782; Thompson v. State, 134 Tex. Cr. R. 405.

However, we may say that before observing the delayed filing of the brief and argument the questions urged therein had been re-examined, and it is thought they were properly disposed of in the original opinion.

In the brief and argument, not filed until the 26th day of February, appellant calls our attention to a matter to which we now advert. In his charge to the jury the trial judge gave various forms of verdicts, leaving blanks to be filled in reflecting the jury's finding. In the form for guilty of assault to murder with malice it appears in the transcript as though the judge had instructed the jury to assess defendant's punishment at three years in the penitentiary. The court had told the jury to write their verdict on a separate piece of paper. Such a verdict so appears in the record. It is now made to appear that in the blank left by the court in his charge there was written in ink the three year penalty, and that there was nothing in blank when the charge was given to the jury. It is evident that before noticing the court's instruction to write their verdict on a separate sheet of paper the jury started to show their verdict by filling in the blank in the appropriate form reflecting their verdict. Any other conclusion would reflect on the intelligence of the court, as well as upon the intelligence of counsel for failure to object to any such instruction as he now suggests is reflected by the record.

The motion for rehearing is overruled.

ON APPELLANT'S SECOND MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has asked for permission to file a second motion for rehearing and presents authorities which demand the respect and full consideration of the court on the proposition advanced. It is fair to state that counsel presenting this case on appeal did not represent appellant on the trial, and is in no way responsible for the condition of the record.

This court has consistently held that new matters cannot be brought into the record after appeal is taken, nor can additional facts be shown by means of affidavit filed in this court. Such ruling must be adhered to. We believe, however, that the case before us is different in that the supplemental record filed herein by the clerk of the trial court does not bring before us any new matter but only furnishes an explanation of the record as it is before us. It occurs to the writer that it is in the category of those cases where extraneous evidence may be admissible to explain ambiguous language, or matters not otherwise understandable. Judge Hawkins' opinion on rehearing sufficiently indicates the uncertaintly found in the record. The rule under consideration should not be so construed as to require a reversal of this case. It is here positively shown that the charge was not given to the jury as indicated by the record; and the clerk, in order to make a true transcript, should have shown originally what had happened in the matter of filling in the blanks of the court's charge after it was placed in the hands of the jury. His erroneous view of his duty in preparing the transcript cannot irrevocably stand contrary to the true facts of the case. No one can complain that a mistake has been corrected and, while diligent counsel have a right to take advantage of all mistakes made by the state, we do not believe that they should insist on a reversal of this case because of an error in the court's charge, when all may now know that such error was not in the charge when given to the jury.

Appellant's second motion for rehearing will not be filed.

HAWKINS, P. J., absent.