

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00284-CR

_____

KIRK ALAN PEARSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 2
Tarrant County, Texas
Trial Court No. 1522986

---

Before Gabriel, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

In this appeal of his misdemeanor family-violence assault conviction, appellant Kirk Alan Pearson challenges the trial court's refusal to order a family-violence center to produce the complainant's records. *See* Tex. Fam. Code Ann. § 93.002. Because the trial court did not err by declining to order the records' production after an in camera review, we affirm the trial court's judgment.

## I. BACKGROUND

Pearson was accused of assaulting his former girlfriend, Marlie, by throwing a tricycle at her, grabbing her face and neck and throwing her to the ground, and hitting her with their car. Before trial, Pearson tried to subpoena documents related to Marlie in the possession of One Safe Place, a local family-violence center. *See id.* § 93.001(2) (defining family-violence centers). The trial court quashed the subpoena, but Pearson continues to insist that documents from One Safe Place contained material evidence that should have been given to him.

### A. PRETRIAL HEARINGS AND RULINGS

At a December 3, 2018 hearing, One Safe Place's Vice President and Director Michelle Morgan described One Safe Place as one part of the Family Justice Center, a "partnership of agencies that provide services to victims of domestic violence." One Safe Place staff conduct the initial intake screening of domestic-violence complainants, which includes collecting demographic information, conducting an evidence-based danger assessment to determine the victim's risk level, planning safety

2

measures, and identifying the complainant's options. In addition to that information, One Safe Place records can include a complainant's description of abuse, referral forms, and therapy records.

Morgan maintained that One Safe Place is prohibited by Chapter 93 of the Texas Family Code, the Violence Against Women Act, and the Victims of Crime Acts from releasing client information or records. While clients can consent to One Safe Place's release of information to third parties—including One Safe Place's partner agencies—Morgan testified that the standard consent form does not give it permission to release client records to a criminal-defense attorney. However, according to Morgan, One Safe Place "[o]ccasionally" interacts with and provides information to the district attorney's office, but only with the complainant's consent.

At the end of the December 3 hearing, the trial court quashed Pearson's subpoena. In a short hearing ten days later, the trial court denied Pearson's request for in camera review of the One Safe Place records. But at a third hearing on February 21, 2019, the trial court reconsidered and offered to review the documents in camera, and the defense agreed it would be appropriate.

When the trial was held in June, Pearson's counsel stated on the record immediately before voir dire that the trial court had initially determined that some of the One Safe Place records contained material information and set a date for their disclosure but later changed his mind and found the records did not contain material information. The trial court neither confirmed nor denied the defense's assertion, but

3

it did perform another in camera review of the One Safe Place records and the next day announced its finding that the records did not contain any *Brady* material or information material in the case. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). The records were sealed and included in the appellate record for our review.

## B. TRIAL TESTIMONY

The trial court having finally refused to compel the production of One Safe Place records, the trial began. Marlie testified first and described her tumultuous ten-month relationship with Pearson. In early 2017, they moved into a house together with her three children and two of his. Marlie testified that it only took about three months for their relationship to become violent. She described Pearson as insecure and controlling, testifying that he did not allow Marlie to get a job, drive the couples' shared vehicle, freely use a cell phone, or take a shower with the bathroom door closed. She averred that he threatened to undermine her ongoing custody battle with an ex, to send naked pictures of her to people, and to tell people that she had attempted suicide. She alleged that in July 2017, Pearson choked her with a PlayStation cord because he thought she was "being shady" when she tried to go outside and smoke. The next month, he slapped her when she asked for help with their children.

Things reached a peak on October 20, 2017, when an argument erupted between them after two of the children got into a fight. Marlie became upset when Pearson minimized her concerns about his son's bullying, and then Pearson threw a

child's tricycle at her, "ran up the driveway and he grabbed [her] by the side of [her] face and [her] neck and threw [her] on the ground." A neighbor testified that she heard Pearson yelling and saw him throw the tricycle into the garage and then "a bit of a scuffle" between him and Marlie. Marlie recounted how Pearson began screaming at her, told her not to call the police, and then coached his two children on what to say if the police arrived.

With police on the way, Pearson tried to quickly leave in their car and hit Marlie with the car when she tried to take a photo of the license plate. She testified that he hit her four times with the car and that each time she was hit, she tried to back up and move out of the way, but "he would swing the car the other way to hit [her]." The neighbor confirmed that Pearson backed the car into Marlie "more than once but less than four times." He then screamed at her and "took off"; he was not there when the police arrived. Photographs of Marlie's injuries—road rash on her leg, marks, swelling and bruising—were admitted and shown to the jury.

Despite her report to the police and the ensuing assault charge, Pearson continued to make contact with Marlie by driving past her home, messaging her, and contacting her family.

Part of Pearson's strategy at trial was to highlight minor inconsistencies between what Marlie told the responding and investigating officers, the district attorney's office, and the jury in her trial testimony. She admitted at trial that she told the responding police officers that Pearson had never been violent before. Other

5

inconsistencies included how many times he hit her with the car and how far away he was when he threw the tricycle.

The jury found Pearson guilty of misdemeanor family-violence assault, and the trial court assessed a 180-day sentence suspended for fifteen months.

## II. DISCUSSION

Pearson brings three points on appeal, all of which complain of the trial court's refusal to compel the production of records from One Safe Place. In his first two points, he argues that the trial court erred by determining that the records were not material to the case, and in his third issue, he argues that the State should have been ordered to produce the records in compliance with Article 39.14 of the Code of Criminal Procedure. We disagree with Pearson on all three points.

### A. MATERIALITY OF ONE SAFE PLACE'S RECORDS

Chapter 93 of the Texas Family Code provides for the confidentiality of certain communications between victims of family violence and advocates at family violence centers. *See* Tex. Fam. Code. Ann. §§ 93.001–.004. With certain exceptions, the statue shields those records from discovery. *Id.* at §§ 93.002, .004.

In his first two points, Pearson asserts that because the trial court invoked Chapter 93 to prevent him from acquiring the records of Marlie's interview at One Safe Place, the statute violated his constitutional rights to confront his accuser (point one) and to present a defense (point two).

6

Pearson essentially concedes that the procedure the trial court employed—reviewing the records in camera to determine whether they contained any material information that should be discoverable—was the correct one.[1] He simply urges us to review the trial court's conclusion that the records did not contain any material information and, if we determine that the trial court was incorrect, to hold that the statute was unconstitutional as applied to his case. Pearson's first two points, then, can be boiled down to a determination of whether the records contained material information under the meaning of *Brady*. He then argues in his third point that if the records contained material information, the State should have been ordered to produce the records in compliance with Article 39.14 of the Code of Criminal Procedure.

We review the trial court's decision not to compel production of confidential information for an abuse of discretion. *See Dixon v. State*, 923 S.W.2d 161, 167 (Tex. App.—Fort Worth 1996), *rev'd on other grounds*, 928 S.W.2d 564 (Tex. Crim. App. 1996). A trial court abuses its discretion if its ruling is outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

[1]Pearson cited a litany of cases that could support the position that an in camera review was appropriate. Because Pearson does not challenge the trial court's in camera review and because we hold that the trial court did not err by declining to compel production of the requested records, we need not decide whether an in camera review is appropriate in the context of the assertion of privilege under Chapter 93.

A criminal defendant is entitled to any favorable and material evidence. *See Ex parte Lalonde*, 570 S.W.3d 716, 724 (Tex. Crim. App. 2019) (discussing *Brady*, 373 U.S. at 87). Favorable evidence is that which "may make a difference between conviction and acquittal and includes both exculpatory and impeachment evidence." *Id.* (quoting *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006)). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). We therefore evaluate the alleged error in the context of the entire record and overall strength of the State's case in order to determine if there is a reasonable probability sufficient to undermine confidence in the outcome. *Id.* (quoting *Bagley*, 473 U.S. at 682 and *Harm*, 183 S.W.3d at 409).

We have reviewed the sealed records and considered them in light of the evidence and testimony presented at trial and the defense's arguments. After our thorough review, we hold that the trial court did not abuse its discretion because the records did not contain material or favorable evidence, and there is not a reasonable probability that the result of the proceeding would have differed if the records had been ordered produced. *See id.*; *James v. State*, 47 S.W.3d 710, 712 (Tex. App.—Texarkana 2001, no pet.). As a result, Chapter 93 as applied in this case did not violate Pearson's constitutional right to confront Marlie, nor did it deprive him of due process. *Cf. Fears v. State*, 479 S.W.3d 315, 329–30 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (holding nondisclosure of reports arising from investigation

8

of suspected child abuse did not violate due process in sexual-assaults-of-a-child prosecution because Family Code Section 261.201 classified such reports as confidential and provided in camera process for admission).  We accordingly overrule Pearson's first two issues.

## B.  DISCLOSURE OF RECORDS

In his third point, Pearson argues that the trial court erred by refusing to order the State to turn over the One Safe Place records.  Relying on Article 39.14's requirement that the State produce anything that is not protected by privilege and that "constitute[s] or contain[s] evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state" he argues that the State was required to produce the records of One Safe Place.  Tex. Code Crim. Proc. Ann. art. 39.14(a), (h) (further requiring the State to produce "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged").

Even if it were clear that One Safe Place is an agent of or in contract with the State, *see Branum v. State*, 535 S.W.3d 217, 225–26 (Tex. App.—Fort Worth 2017, no pet.), or that its records were otherwise within the control of the State—facts that were disputed in the trial court—the evidence must still be material in order to require the State to produce it.  *See* Tex. Code Crim. Proc. Ann. art. 39.14(a), (h).  Having held

9

that the records do not contain any evidence material to the prosecution, the State was not bound to produce it. We overrule Pearson's third point.

## III.  CONCLUSION

Having overruled each of Pearson's points, we affirm the trial court's judgment.

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 03, 2020.