Samuel WEBB, Appellant,

v.

The STATE of Texas, Appellee.

No. 43793.

Court of Criminal Appeals of Texas.

June 2, 1971.

Edward Ganem, Victoria, for appellant.

Ted Butler, Dist. Atty., Charles D. Butts, Lucien B. Campbell, Asst. Dist. Attys., San Antonio, and William C.

Sparks, Dist. Atty., and D. F. Martinak, Asst. Dist. Atty., Victoria, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, ninety-nine (99) years.

Appellant was shot in the encounter which resulted in the death of the deceased. His first two grounds of error arise out of the removal of a bullet from his body, which bullet was later used by the State for comparison purposes to show that it had been fired from the weapon of the deceased. In his first ground of error, appellant contends that the removal of the bullet and its subsequent use by the police constituted such a search as is prohibited by the Fourth Amendment to the United States Constitution.

Although the record is not entirely clear as to how appellant first came to the attention of the police, it appears that a call was placed to have an ambulance sent to appellant's home to take a shooting victim to the hospital. In response to this call a police officer was also sent to the location, as is apparently the custom in San Antonio. Detective Aguilar then went to the emergency room, where he advised appellant of his rights. At that time, appellant told Aguilar that he had been shot by some prostitutes and that the prostitutes had taken his wallet. The detective then determined that appellant still had possession of his wallet.

While appellant was being treated at the emergency room, the police learned that the deceased had been shot, and that he had shot his assailant one time. It appears that appellant was made a suspect in this shooting because he had been shot one time and because his story about his injury did not appear to be true. Appellant was placed under arrest, an armed guard was stationed in his presence twenty-four hours a day, and he was transferred to Bexar County Hospital.

Five days after the shooting, Dr. Leo Cuello examined appellant, and determined that there was a local infection in the area of the bullet, which had remained in appellant's back approximately one-fourth to one-half inch below the surface. He determined, together with Dr. Orlando Gonzalez, that it was medically advantageous to remove the bullet, that removal would shorten appellant's stay at the hospital and would lessen the infection, although it was not necessary to the life or death of the patient that the bullet be removed. Neither doctor had any discussion with law enforcement officers about the removal of the bullet; the doctors did know that a police guard was stationed with appellant at all times, but they had no discussion with the guard regarding the surgery. Dr. Gonzalez merely notified the police officer that the surgery would be done, in order that the officer would remove appellant's handcuffs and allow him to go to the X-ray room, where the minor operation was performed. A written consent to the operation was secured from appellant, and Dr. Gonzalez then administered a local anesthetic and removed the bullet. He handed the bullet to a nurse, and she held it until the operation was completed. After the operation was finished, a detective waiting outside the room requested the bullet. Dr. Gonzalez marked the bullet, then turned it over to the detective.

It was shown that the doctors at Bexar County Hospital, upon removal of a bullet, generally marked the bullet, and turned it over to the Department of Pathology. The bullets were marked in order that the doctors could identify them at trial, if necessary.

Appellant has totally failed to show that the surgeons were conducting an illegal search when they removed the bullet. They were simply performing a medical operation, for which they had obtained permission from the appellant. There was no unpermitted invasion of appellant's body, such as was prohibited in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96

L.Ed. 183, or even in Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W.2d 381. These cases involved an unconsented to intrusion into the appellant's body. Although some unpermitted intrusions into the body of the accused may be admissible into evidence, see Commonwealth of Pennsylvania v. Tanchyn, 200 Pa.Super. 148, 188 A.2d 824 and State of Minnesota v. Emerson, 266 Minn. 217, 123 N.W.2d 382; we need not rule on that issue in the case at bar.

The main thrust of appellant's argument is that he should have been warned that the doctors would turn over the bullet to the police authorities. The evidence conclusively shows that this operation was not performed for the purpose of securing evidence for the police. We know of no rule of law which prohibits an individual from submitting to police officials objects which are lawfully in his possession, and the bullet was lawfully obtained from the appellant. We have, in the case at bar, no deception in regard to the reason for removal of the bullet, as was involved in Graves v. Beto, 424 F.2d 524 (5th Cir. 1970). We have been unable to find any cases in support of appellant's contention.

Appellant's first ground of error is overruled.

■ Appellant next contends that the removal of the bullet was a violation of his Fifth Amendment right against self-incrimination. Appellant cites us to no case holding that an operation such as this amounts to self-incrimination.

Appellant also contends, in this same ground of error, that he was forced to waive his Fifth Amendment privilege at his trial in order to contest the legality of the removal of the bullet. If appellant had chosen to testify outside the presence of the jury for the limited purpose of contesting this matter, he could have done so without further waiving his Fifth Amendment rights. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Lopez v. State,

Tex.Cr.App., 384 S.W.2d 345; Brumfield v. State, Tex.Cr.App., 445 S.W.2d 732.

■ Appellant's third ground of error is that the police delayed unnecessarily in carrying him before a magistrate as required by Art. 15.17, Vernon's Ann.C.C.P. The record shows that a substantial portion of the delay was occasioned by appellant's confinement in the hospital for treatment of his bullet wound. There was no confession introduced at trial, and appellant had an attorney at his line-up. In Hearn v. State, Tex.Cr.App., 411 S.W.2d 543, this Court held that the failure to take the accused before a magistrate immediately did not affect the admissibility of a blood test taken from him.

Appellant's fourth ground of error is that the court erred in overruling his motion for a continuance. We have searched this record with care and are unable to find a motion for continuance on the grounds set forth in his brief.

■ Appellant's fifth ground of error is that he was not warned of his constitutional rights by the arresting officer and that he was thereby denied the benefit of counsel. As shown earlier, Detective Aguilar testified that, as soon as he realized that the appellant was wanted in connection with a shooting, he warned him of his rights from the card which he carried in his pocket. Although the contents of the card were not introduced into evidence, appellant has failed to show how he was harmed thereby. As was stated earlier, no confession was introduced and appellant had an attorney at his line-up. Appellant does not contend that any evidence was introduced at his trial which should have been suppressed due to a lack of warnings, other than the bullet. Appellant must show that some evidence was introduced at his trial, and that this evidence was inadmissible because he had not been properly warned.

Finding no reversible error, the judgment is affirmed.