**Opinion filed November 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00332-CR
_____

**CLEVELAND JEROD THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6486**

## O P I N I O N

The jury found Cleveland Jerod Thomas guilty of possession of more than one gram but less than four grams of cocaine and also found two enhancement allegations to be "true." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(c) (West 2010). The jury assessed punishment at confinement for seventy-five years. The trial court sentenced Appellant accordingly. Appellant asserts three

issues on appeal, but he does not challenge the sufficiency of the evidence. We affirm.

## I. *Evidence at Trial*

Because Appellant does not assert a sufficiency challenge to the evidence, we recite only those facts necessary to address his issues on appeal. Jody Bryson Tullos, a sergeant with the Texas Department of Public Safety, received information that a suspect in a pending investigation was driving through Haskell. Shortly thereafter, Sergeant Tullos observed Appellant driving a vehicle that matched the description given. Sergeant Tullos drove parallel to Appellant for five to six blocks, during which time he observed what he believed were one or more traffic violations, which included extremely dark window tint on the vehicle's windows. Based on these violations, Sergeant Tullos stopped Appellant.

During the stop, Sergeant Tullos observed that Appellant kept the left side of his body hidden and did not look directly at Sergeant Tullos. Sergeant Tullos found this behavior to be "extremely suspicious." He went to his patrol car to check Appellant's identity and other information and learned that Appellant's driver's license had been suspended in Louisiana.

When Sergeant Tullos returned to Appellant's vehicle, he walked to the front of the vehicle to see Appellant's hidden left side. There, he observed a large protrusion from Appellant's left cheek. He asked Appellant what he had in his mouth, and Appellant replied that he had an abscess. Appellant opened his mouth slightly in an apparent effort to corroborate his explanation. When he did so, however, Sergeant Tullos saw a piece of clear plastic draped over the left side of Appellant's teeth onto his tongue. Believing that Appellant was hiding narcotics, Sergeant Tullos requested that Appellant pull his cheek back. Appellant complied, and a "yellow-ish material inside [a] clear, plastic bag" popped over his teeth.

2

Appellant then swallowed the bag despite Sergeant Tullos's attempt to prevent Appellant from doing so.

Sergeant Tullos arrested Appellant for tampering with evidence and transported him to Haskell Memorial Hospital. At the hospital, Appellant refused treatment, and the doctor on call refused to perform any procedures without his consent. Consequently, Sergeant Tullos contacted the district attorney's office to procure a warrant to search the contents of Appellant's stomach. Sergeant Tullos remained at the hospital with Appellant to see if Appellant suffered any ill effects from ingesting the material and to ensure that Appellant did not die.

Several hours later, Appellant exhibited physical symptoms indicative of a drug overdose.[1] Appellant stated that he had swallowed illegal narcotics and asked doctors to treat him. With Appellant's consent, doctors administered a regimen of charcoal to purge his system and limit his absorption of the narcotic. Appellant then proceeded to vomit and defecate into containers. A nurse came to the room periodically and removed approximately five containers of the expelled fluids. Appellant did not object to the removal of the containers. The nurse then took those buckets to another room and sifted through their contents in an effort to ascertain the source of Appellant's overdose. Through this process, the nurse found a solid mass, which he gave to a police officer. The police also examined Appellant's black and viscous vomit in a search for the clear plastic bag that Appellant apparently had swallowed while being questioned by Sergeant Tullos. Subsequent analysis of the substance in the plastic bag revealed that it was cocaine.

---

[1]Sergeant Tullos observed that Appellant had "bec[o]me extremely ashy, sweating profusely, . . . began to tremble, and his eyes appeared fearful." His heart rate fluctuated between 150 to 160 beats per minute.

## II. *Issues Presented*

Appellant asserts in his first issue that the trial court improperly denied his motion to suppress evidence. Second, Appellant asserts that the trial court erred when it denied his request for an Article 38.23 jury charge instruction on the definition of exigent circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Third, Appellant asserts that the trial court abused its discretion when it permitted the jury to consider prior felony convictions from Louisiana without proper verification that they were appropriate for enhancement purposes.

## III. *Discussion and Analysis*

### A. *Issue One: Denial of Motion to Suppress*

Appellant moved to suppress the cocaine because, he alleged, the search of his expelled bodily fluids was a violation of his Fourth Amendment rights. *See* U.S. CONST. amend. IV. The trial court denied this motion, but did not make specific findings of fact or conclusions of law. Appellant now appeals the trial court's decision under two alternate theories. First, Appellant claims that the ultimate seizure of the cocaine was invalid as it was fruit of an impermissible pretextual stop. Second, the search of Appellant's expelled bodily fluids, namely his vomit, was performed in violation of his Fourth Amendment rights. *See id.*

#### 1. *Pretextual Stop*

Appellant argues in his first theory to support his motion to suppress that the cocaine discovered by Sergeant Tullos was the fruit of a Fourth Amendment violation because the traffic stop constituted an impermissible pretextual stop. Appellant moved to suppress the evidence, but the trial court denied the motion. A motion to suppress is a specialized objection to the admissibility of evidence and, thus, must be timely and sufficiently specific to inform the trial court of the complaint. *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). It is well settled that almost every right, constitutional or otherwise,

4

may be waived by the failure to object. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986).

In his pretrial motion to suppress, Appellant broadly sought to suppress all evidence obtained as a result of a warrantless search conducted without probable cause or reasonable suspicion of criminal activity. During the hearing, Appellant exclusively argued that the cocaine seized should be suppressed because the officer did not obtain a warrant to search Appellant's expelled bodily fluids. Appellant did not raise the issue of an impermissible pretextual stop before the trial judge. In failing to do so, he has waived that complaint for appeal. *See Pyles v. State*, 755 S.W.2d 98, 116 (Tex. Crim. App. 1988); *Cox v. State*, 931 S.W.2d 349, 358 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997).

### 2. *Search of the Expelled Bodily Fluids*

Appellant, under a second theory in support of his motion to suppress, contends that the trial court abused its discretion when it failed to suppress the cocaine because Officer Tullos did not obtain a search warrant to search Appellant's expelled bodily fluids. A trial court's ruling on a motion to suppress lies within the sound discretion of that court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts if the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an

evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Three elements reviewed under a Fourth Amendment analysis are (1) was the action a "search" that fell within the protection afforded by the Fourth Amendment because the person had a legitimate expectation of privacy; (2) does the person challenging the search have standing; and (3) was a valid warrant, based upon probable cause, secured by law enforcement for the search, and if not, was there an applicable exception to the warrant requirement. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1558–60 (2013); *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984); *Villarreal*, 935 S.W.2d at 138. In this case, although not explicitly outlined by Appellant, his complaints are mainly (1) that the medical treatment by the doctors was a bodily intrusion search and seizure that required a warrant and (2) that the subsequent examination of his expelled bodily fluids was an invalid search and seizure. Thus, our analysis will focus on the validity of any search and the existence of an exception to the warrant requirement.

For purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society deems objectively reasonable. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001). Whether a search was reasonable under the Fourth Amendment is a mixed question of law and fact. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The burden of establishing a legitimate expectation of privacy is upon an appellant. *Villarreal*, 935 S.W.2d at 138. To establish an expectation of privacy, an accused must show (1) that, by his conduct, he exhibited a genuine intention to preserve something as private (a subjective expectation of privacy) and (2) that circumstances

6

existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id.* If an appellant fails to establish a reasonable expectation of privacy, he may not complain of a constitutional violation. *Hudson*, 468 U.S. at 525–26.

Appellant claims that Sergeant Tullos completed an illegal search of his bodily fluids as part of a bodily intrusion search and seizure. In *Winston v. Lee*, the United States Supreme Court described six factors to be considered when determining the reasonableness of a bodily intrusion search and seizure. *Winston v. Lee*, 470 U.S. 753, 759–61 (1985). These factors include:

> 1. There must be a probable cause and a search warrant, absent exigent circumstances;

> 2. The extent to which the procedure may threaten the safety or health of the individual;

> 3. All reasonable medical precautions were taken and no unusual or untested procedures were employed;

> 4. The procedure was performed by a physician in a hospital according to accepted medical practices;

> 5. The search may be unjustifiable if it endangers the life or health of the suspect; and

> 6. The extent of the intrusion upon the individual's dignitary interests and personal privacy, and bodily integrity.

*Marmolejo v. State*, 743 S.W.2d 669, 670 (Tex. App.—El Paso 1987, pet. ref'd) (citing *Winston*, 470 U.S. at 759–61). Several Texas appellate courts have applied the *Winston* factors to body-search cases. However, with the exception of the *Oviedo v. State* decision, the *Winston* factors have not been applied where a suspect has willingly consented to medical treatment. *Compare, e.g.*, *Hereford v. State*, 339 S.W.3d 111, 123–24 (Tex. Crim. App. 2011); *State v. Johnston*, 336 S.W.3d 649, 660 n.45 (Tex. Crim. App. 2011); *Smith v. State*, No. 13-11-00694-CR, 2014 WL

5901759, at *5 (Tex. App.—Corpus Christi Nov. 13, 2014, pet. granted); *Forsyth v. State*, 438 S.W.3d 216, 224 (Tex. App.—Eastland 2014, pet. ref'd); *Lewis v. State*, 56 S.W.3d 617, 621 (Tex. App.—Texarkana 2001, no pet.); *and Marmolejo*, 743 S.W.2d at 670, *with Oviedo v. State*, 767 S.W.2d 214, 217 (Tex App.—Corpus Christi 1989, no pet.).

Both Appellant and the State refer to *Oviedo* in their respective briefs. In *Oviedo*, the court utilized the six *Winston* factors to determine the reasonableness of a bodily intrusion search and seizure. *Oviedo*, 767 S.W.2d at 217–18. There, officers transported Oviedo to a hospital for treatment after he swallowed a bag of cocaine in an effort to avoid arrest. *Id.* at 215–16. At the hospital, Oviedo displayed symptoms that he had suffered a drug overdose, and the doctor on call informed him that he needed treatment. *Id.* at 216. Oviedo "initially refused treatment, but changed his mind and allowed [the doctor] to perform all of the procedures." *Id.*

Although the facts in *Oviedo* are similar to Appellant's case, so are the facts in *Webb v. State*. *See Webb v. State*, 467 S.W.2d 449 (Tex. Crim. App. 1971). In *Webb*, the defendant was transported to a hospital after a call alerted authorities that he had been shot. *Id.* at 450. Police officers met Webb at the hospital. *Id.* While doctors treated Webb, police received information that indicated Webb was involved in an earlier murder. *Id.* Consequently, officers placed him under arrest and stationed an armed guard "in his presence twenty-four hours a day." *Id.* When the doctor ultimately removed the bullet from Webb, he turned it over to police. *Id.* There, the court opined that a bodily intrusion analysis was not applicable because:

> Appellant has totally failed to show that the surgeons were conducting an illegal search when they removed the bullet. They were simply performing a medical operation, *for which they had obtained permission from the appellant*. There was no unpermitted invasion of appellant's body, such as was prohibited in *Rochin v. California*, 342 U.S. 165 . . . or even in *Apodaca v. State*, . . . 146 S.W.2d 381. These cases involved an unconsented to intrusion into the appellant's body.

8

> Although some unpermitted intrusions into the body of the accused may be admissible into evidence, . . . we need not rule on that issue in the case at bar.

*Id.* at 450–51 (emphasis added) (citations omitted). Because Appellant consented to the medical treatment that resulted in his vomiting and defecation, there was no need for a warrant, and a *Winston* analysis is unnecessary. Thus, there was no Fourth Amendment violation in inducing Appellant to purge the contents of his stomach.

As to the issue of the nurse's search of his bodily fluids and the search of his vomit by law enforcement, a review of the record indicates that no evidence demonstrated that Appellant harbored a "subjective" expectation of privacy in his expelled bodily fluids. Appellant vomited and defecated into containers as part of a reaction to medical treatment for a drug overdose. Throughout this process, medical personnel periodically removed the containers, sifted through their contents in order to discover the type of drug Appellant had taken, and then disposed of the remainder of the bodily fluids. The hospital staff worked in accordance with established hospital procedures. Law enforcement also searched Appellant's vomit. Appellant made no effort—explicit or otherwise—to protest the removal of the containers filled with his bodily fluids and never indicated a desire to deviate from the medical procedures utilized. Appellant's conduct did not demonstrate that he held a genuine intention to preserve the fluids as private property, and he has failed to establish that he had a legitimate expectation of privacy in his expelled bodily fluids. *See Villarreal*, 935 S.W.2d at 138. Consequently, the examination of his expelled bodily fluids, in the facts presented in this case, was not an impermissible search and seizure, and his expelled bodily fluids were not encompassed within the protection of the Fourth Amendment.

In summary, Appellant's first complaint fails because he consented to the medical treatment, which obviated the need for a warrant. As for his second

complaint, the examination of his expelled bodily fluids was not a search within the Fourth Amendment because Appellant did not demonstrate a legitimate expectation of privacy in those expelled bodily fluids. Therefore, the trial court did not abuse its discretion when it refused to suppress the evidence of cocaine. *See Hudson*, 468 U.S. at 525–26; *Villarreal*, 935 S.W.2d at 138.

Appellant also relies on the court's decision in *Comeaux* to support his contention that he had a reasonable expectation of privacy in the expelled fluids. We find that Appellant's case is distinguishable from the facts in *Comeaux*. *See State v. Comeaux*, 818 S.W.2d 46 (Tex. Crim. App. 1991) (plurality op.).[2] In *Comeaux*, the Court of Criminal Appeals held that the defendant had a "subjective" expectation of privacy that a blood sample given to physicians after an accident would not be used for a purpose other than that for which it was given. *Id.* at 51. The *Comeaux* court noted that, "in this age of blood testing for everything from HIV infection to drug use, that a person does not assume that, by giving a sample of blood for private testing, that blood sample could then be submitted to the State, or to any other person or entity, for a purpose other than that for which it was given." *Id.* at 52. But in Appellant's case, he *produced* his fluids as a part of an overall treatment regimen to prevent the absorption of cocaine by his body. The fluids were a consequence or by-product of this treatment. Appellant did not entrust his fluids to doctors but, instead, relied on the doctors to medically treat him in a way to rapidly remove the drugs from his body and save his life. Under such circumstances, Appellant did not submit the fluids for an exceedingly narrow purpose as in *Comeaux*. However, while we hold that, in the specific facts of this case, Appellant did not sufficiently

---

[2]*Comeaux* is a plurality opinion that we address as part of Appellant's first issue. *See Comeaux*, 818 S.W.2d 46; *see also State v. Hardy*, 963 S.W.2d 516, 518–19 (Tex. Crim. App. 1997). We note that, while the objectively reasonable portion of the *Comeaux* decision has been questioned, the court's subjective-expectation-of-privacy analysis is compelling. *See Hardy*, 963 S.W.2d at 518–19; *Thurman v. State*, 861 S.W.2d 96, 99–100 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

demonstrate a subjective expectation of privacy in his expelled vomit and fecal matter, we do not entirely foreclose the possibility that a future set of facts might support such an expectation. We overrule Appellant's first issue.

*B. Issue Two: Denial of Request for Article 38.23 Jury Charge Instruction*

Appellant asserts in his second issue that the trial court erred when it denied his request for an instruction under Article 38.23 of the Texas Code of Criminal Procedure. Article 38.23 provides in part:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

CRIM. PROC. art. 38.23(a). During the charge conference, Appellant contended that the court should issue an instruction on the legality of the search of Appellant's expelled bodily fluids and the definition of exigent circumstances. Appellant sought to have the following instruction included:

> An officer is permitted to make a warrantless seizure of items if such exigent circumstance exist wherein evidence could be destroyed and the amount of time to obtain a warrant would interfere with the preservation of such evidence.
>     . . . .
> Exigent circumstances have been variously defined as especially pressing or urgent law enforcement need and a compelling need for an official action and no time to secure a warrant. Exigent circumstances, you are instructed, shall exist if one or more of the following dangers exist: one, imminent threat to life; two, imminent and serious threat to property; three, imminent escape of a suspect; four, imminent destruction of evidence.

The trial court denied the instruction request and gave this instruction on when an officer has probable cause to stop a vehicle:

> [O]ur law permits the stop, arrest, detention, and search of a person by a peace officer without a warrant only when probable cause exists to

11

believe that an offense against the laws of this state or of the United States have been violated. An officer is permitted to make an arrest of a motorist if the officer has probable cause to believe the motorist has committed or is committing an offense.

When we review a claim of jury charge error, we engage in a two-step process. First, we determine whether error exists, and then we determine whether sufficient harm resulted from the error to require reversal. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Olivas v. State*, 202 S.W.3d 137, 143 (Tex. Crim. App. 2006); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). We do not reach the harm issue, however, unless we first find error in the charge.

When a fact question arises at trial regarding how evidence was obtained, Article 38.23 requires the trial court to instruct the jury to disregard the evidence if the jury believes that the evidence was obtained in violation of the Constitution or laws of the United States or of Texas. *See* CRIM. PROC. art. 38.23. There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction to disregard evidence: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Accordingly, an Article 38.23 instruction is only required if there is a factual dispute about how the evidence was obtained. *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). Further, an Article 38.23 instruction is not proper for disputes regarding the legal significance of facts. *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012).

In our examination of the record, we find no factual disputes regarding how the cocaine was obtained. Both the State and Appellant agree that Sergeant Tullos arrested Appellant and transported him to Haskell Memorial Hospital. There,

12

Appellant initially denied treatment and was kept under observation. Upon showing signs of a drug overdose, Appellant consented to having his stomach purged of all contents. Through a search of his expelled bodily fluids, Officer Tullos found partially digested cocaine. Appellant only disagrees with the trial court's determination of the legal significance of the foregoing—namely the legality of the alleged search. This does not entitle Appellant to an Article 38.23 instruction. *See Robinson*, 377 S.W.3d at 722; *Brooks v. State*, 707 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (where the essential facts concerning a search or an arrest are not in dispute, the legality of the search or arrest is a question of law, not of fact); *see also Campbell v. State*, 492 S.W.2d 956, 958 (Tex. Crim. App. 1973). We overrule Appellant's second issue.

*C. Issue Three: Use of Louisiana Convictions for Enhancement*

Appellant asserts in his third and final issue that the trial court erred when it allowed the jury to consider, for enhancement purposes, Appellant's prior felony convictions from Louisiana. He contends that the State failed to prove that the Louisiana convictions were not state jail felonies and, thus, that the trial court erred when it allowed the convictions to be used for the purpose of enhancement. A conviction in another state can be used to enhance punishment in a felony case if the crime constituted a felony in Texas. *Acosta v. State*, 650 S.W.2d 827, 829 (Tex. Crim. App. 1983). However, a state jail felony may only be used to enhance a state jail felony. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 12.425 (West Supp. 2015).

As noted in *Cain v. State*, the structure of the Louisiana penal system makes the identification of enhancement-eligible convictions difficult. *Compare Cain v. State*, 721 S.W.2d 493, 494 (Tex. App.—Houston [1st Dist.] 1986, no pet.), *with Prado v. State*, No. 11-99-00053-CR, 2000 WL 34234883, at *3–4 (Tex. App.—Eastland Jan. 13, 2000, no pet.) (not designated for publication). In determining whether foreign convictions were felonies, appellate courts have, at least in part,

compared the punishment assessed by foreign jurisdictions to that permitted in Texas. *See Tucker v. State*, 136 S.W.3d 699, 701 (Tex. App.—Texarkana 2004, no pet.); *Cain*, 721 S.W.2d at 494. A state jail felony in Texas is punishable by confinement for a term not to exceed two years. PENAL § 12.35(a).

The State alleged that Appellant was previously convicted in Louisiana of distribution of crack cocaine on June 9, 2004, and of possession of cocaine on November 7, 2007. During the punishment phase, the State offered, and the trial court admitted, certified judgments of conviction as to each of the enhancement allegations. State's Exhibit No. Five shows that Appellant was convicted and sentenced to serve five years and four years for the possession and distribution convictions, respectively. These terms both exceed the maximum sentence for a state jail felony under Texas law. *See* PENAL § 12.35(a). Furthermore, an investigator for the district attorney's office testified that the Louisiana felonies were analogous to Texas felony offenses that are eligible for use for enhancement purposes. The trial court did not abuse its discretion when it permitted the jury to consider Appellant's prior Louisiana felony convictions. *See Tucker*, 136 S.W.3d at 701; *Cain*, 721 S.W.2d at 494. We overrule Appellant's third and final issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

November 30, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.