

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00614-CR

Stetson Roy **SEKULA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 519407
Honorable Wayne A. Christian, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                  Karen Angelini, Justice
                  Patricia O. Alvarez, Justice

Delivered and Filed:  March 21, 2018

AFFIRMED AS REFORMED

This case stems from Appellant Stetson Sekula's driving while intoxicated conviction following a one-vehicle accident. The jury found Sekula guilty; and, the trial court assessed punishment at 180 days in the Bexar County Jail, suspended and probated for a period of one-year. On appeal, Sekula raises several issues related to the testimony of State witnesses San Antonio Police Officer Walter Henning and forensic scientist Debra Stephens. Sekula also contends the trial court erred in assessing attorney's fees. We reform the judgment to delete the assessment of the attorney's fees against Sekula and affirm the judgment as reformed.

## PROCEDURAL BACKGROUND

Sekula was arrested for driving while intoxicated on June 4, 2016, and the trial court appointed defense counsel on June 12, 2016. Less than a month later, on July 8, 2016, defense counsel filed multiple, standard discovery motions, including several motions to suppress, a request for the State's witness list, and an all-encompassing "Defendant's Motion Requesting Relief of Various Sorts." Two weeks later, on July 20, 2016, defense counsel filed a "Motion to Suppress Videotape and Audiotape Evidence" and a "Motion to Take Judicial Notice of Nystagmus Causes Other than Alcohol." On August 8, 2016, the State filed its list of witnesses; and, the following day, on August 9, 2016, the State filed an amended witness list.

Sixty-six days after Sekula was arrested and charged, the matter was called for trial. On the morning of August 9, 2016, the trial court heard pretrial motions; the jury was selected that afternoon. After two days of testimony, Sekula was found guilty of driving while intoxicated. The trial court sentenced Sekula to 180 days confinement in the Bexar County Jail, suspended and probated for a term of one-year.

On appeal, Sekula contends the trial court erred in denying his (1) motions to suppress, (2) motions to exclude the expert testimony of Debra Stephens and Officer Walter Henning, and (3) motions for continuance. Sekula also contends the trial court erred in ordering that he pay court-appointed attorney's fees without a hearing to determine whether there was a change in his financial status.

We turn first to Sekula's arguments regarding the State's failure to disclose its expert witnesses as required under Texas Code of Criminal Procedure article 39.14(b). *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (West Supp. 2017).

**EXPERT WITNESSES AND ARTICLE 39.14(b)**

**A.     Arguments of the Parties**

Sekula contends the State violated article 39.14(b) by not timely disclosing expert witnesses.  He argues that because the State failed to comply with article 39.14(b), the trial court erred in overruling his sworn motion for continuance and allowing the experts to testify regarding the horizontal gaze nystagmus test, nystagmus in general, the results of Sekula's breath-alcohol concentration level test, and the science of breath-alcohol concentration levels.

The State counters that first, the record does not indicate, and Sekula does not argue, that the State acted in bad faith.  Second, the evidence shows Sekula was not surprised by either witness and could have reasonably anticipated their testimony.

**B.     Texas Code of Criminal Procedure article 39.14**

Texas Code of Criminal Procedure article 39.14, or the Michael Morton Act, provides that the State must, upon the defendant's request, allow the defendant access to reports, statements, and other documents in the State's possession that do not constitute work product.  *See id.*  Article 39.14(b) further provides that

> On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin, the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.

*Id.* art. 39.14(b).  All parties agree the State provided access to its file at the time of defense counsel's appointment, including all offense reports and videotapes of the night of Sekula's arrest. The State did not, however, provide defense counsel with a separate witness list including Officer Henning's and Stephens's names, as required under article 39.14(b), until the day before the trial began.  *See id.*

C.     **Testimony before the Trial Court**

San Antonio Police Officer Walter Henning testified that shortly after midnight, on June 4, 2016, he was dispatched to the corner of Prue Road and Old Prue Road for a major, single-vehicle accident.  When Officer Henning arrived, the driver of the vehicle was not at the scene.  Sekula was located less than a quarter of a mile from the accident scene.  Officer Henning described Sekula as having "some small lacerations on him and had some, like, plants and stuff on his clothing, remnants of plants."  The officer confirmed that Sekula was not injured and did not require medical assistance.

Officer Henning testified Sekula's eyes were bloodshot and he "was emitting an odor of alcoholic beverages. . . . Not very, very strong, but strong enough where I could smell it.  I would say moderate."  Sekula affirmed to Officer Henning that he was in an accident on Prue Road, and explained that "he was traveling somewhere between 60 and 70 miles per hour, possibly 80, [when] he lost control."  Referring to his notes, Officer Henning testified that Sekula told him, "To be honest with you, completely honest, there was alcohol involved."  The officer described Sekula as polite, talkative, and his speech as "slurred."  Sekula relayed to Officer Henning that he had purchased twenty Budweiser beers and that he had consumed "about six" of the beers and "half a shot of Jack Daniel's whiskey."  On cross-examination, Officer Henning acknowledged Sekula told him the accident was not a result of his "being drunk," but because he was "stupid."  Based on Sekula's appearance and demeanor, Officer Henning decided to administer field sobriety tests.

Outside the presence of the jury, defense counsel objected, asserting that because Officer Henning was an expert with regard to any testimony about the horizontal gaze nystagmus test or nystagmus in general, and the State failed to designate Officer Henning as an expert witness, pursuant to article 39.14(b), the officer was precluded from offering testimony about the field sobriety test or the causes of nystagmus.  Defense counsel further explained he would have the

same argument with regard to forensic expert Debra Stephens if the State planned to call her as a witness.

| | |
|---|---|
| Trial Court: | Where were you yesterday before we went into voir dire and picked a jury when I said, "Is there anything before trial and before picking a jury that we need to talk to? Any pretrial motions, any other issues we need to take up outside the jury presence?" And the State said they had a motion in limine, and we talked about that. And I don't recall if you had anything at all, but you certainly didn't bring this up yesterday. Why not? |
| Defense Counsel: | Judge, I don't know what they're going to do, what experts they're going to put on. |
| Trial Court: | Well, why didn't you say, "Yes, I have an issue. They haven't given us a valid witness list." And, "Hey, by the way, they haven't given us our discovery for the breath test." You didn't say a word. Why? |
| Defense Counsel: | The breath test was because we never received proper disclosure of the expert. And the witness list, it's not my job to cure their errors, Your Honor. |

After the trial court denied his motion, defense counsel urged his sworn motion for continuance asserting that under the same principles, he could not effectively cross-examine either expert.

| | |
|---|---|
| Trial Court: | And why didn't you bring this to my attention yesterday before we spent four and a half hours picking a jury? |
| Defense Counsel: | Judge, again, the State is just now bringing their experts. |
| Trial Court: | Answer my question, Counsel. Why did you not bring it to my attention yesterday? If you wanted a continuance, you knew the State was going to put on breath-test evidence. We discussed it yesterday at length. You didn't say a word of it to the Court. Why didn't you object? |
| Defense Counsel: | I don't know that they want to put on breath-test evidence. There's two other ways to prove this case. |
| Trial Court: | Now, Counsel, you're not telling the truth, so have a seat and be quiet. |

The jury was brought back into the courtroom and the trial proceeded. Officer Henning testified that he observed four clues out of six when he conducted the horizontal gaze nystagmus test on Sekula. The officer also testified that Sekula exhibited three clues out of eight on the walk

and turn test, and one out of four clues on the one-leg stand test. Officer Henning further testified that, based on the totality of the circumstances, including his training and experience in viewing intoxicated individuals, he concluded Sekula was intoxicated. Sekula was placed under arrest and Officer Henning transported Sekula to booking where Sekula agreed to submit to a breath-alcohol test.

In addition to other officers at the scene, and lay witnesses, the State called Debra Stephens, a technical supervisor with Alamo Forensic Services. Stephens explained how alcohol affects an individual's central nervous system and how brake-reaction time in a vehicle will be slowed. She also testified that alcohol affects the optic nerve and an individual's ability to see clearly, specifically one's peripheral vision, and an individual's balance and coordination, both of which are critical to operating a motor vehicle and steering safely on the roadway. Stephens also explained that, regardless of an individual's size, the human liver will metabolize alcohol at .0105 concentration, or approximately one drink, per hour.

Stephens testified that "everyone has lost the normal use of their mental and physical faculties with an alcohol concentration of 0.08." As part of her job duties, she calibrates the Intoxilyzer machines in Bexar County, including the machine used to test Sekula. She opined Sekula's test results of 0.107 and 0.122 per 210 liters of breath were accurate and performed on a properly calibrated machine.

Defense counsel reurged his motion for continuance. The trial court again denied the motion.

## ANALYSIS

Because Sekula's motions for continuance turn on the trial court's admission of Stephens's and Officer Henning's testimony, we first address whether the trial court erred in allowing their testimony.

**A.** **Trial's Court's Admission of the Testimony of Officer Henning and Forensic Scientist Stephens**

    *1.*     *Standard of Review*

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). More specifically, "[i]f the trial court allows a witness who was not on the State's list to testify, we review that decision for an abuse of discretion." *Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). An appellate court will uphold the decision provided that the trial court's decision, when viewed "at the time the ruling was made," *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.), "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito-Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *see also Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) ("If there is evidence supporting the trial court's decision to admit evidence, there is no abuse and the appellate court must defer to that decision. Even when the trial judge gives the wrong reason for his decision. . . ." (citations omitted)). Under our abuse of discretion review, s*ee Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.—San Antonio 2003, no pet.), we will uphold the trial court's admission of the evidence if "the decision [was] correct on any theory of law applicable to the case." *See Osbourn*, 92 S.W.3d at 538.

    *2.*     *Application of Article 39.14(b)*

Sekula argued that by filing his article 39.14(b) motion, the State was required to disclose, no less than twenty days before the start of trial, the name and address of any expert witness the

State planned to call. The State's failure to timely disclose the names of any expert witnesses led him to believe the State would not be relying on expert testimony. The trial court disagreed, "Merely filing a motion is not enough. I know you think it is, but it's not."

Prior to September 1, 2015, the State's duty was "triggered only by a defendant's motion requesting disclosure of the State's testifying experts *and a trial court order*." *In re Tibbe*, No. 03–13–00741–CV, 2013 WL 6921525, at \*2 (Tex. App.–Austin Dec. 31, 2013, orig. proceeding) (mem. op.) (emphasis added). Article 39.14(b) no longer requires a trial court order; the defendant's request alone trigger's the State's duty to disclose. *See* Act of May 21, 1999, 76th Leg., R.S., ch. 578, § 1, 1999 Tex. Gen. Laws 3118, 3118 (amended 2015) (current version at TEX. CODE CRIM. PROC. ANN. art. 39.14(b)). Because defense counsel's request was sufficient to trigger the State's duty to disclose, we conclude the State failed to timely designate Officer Henning and Debra Stephens in accordance with article 39.14(b). *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b). Our analysis, however, does not end here.

  *3. Prosecutor's Bad Faith and Sekula's Ability to Reasonably Anticipate*

In determining whether the trial court abused its discretion in allowing Stephens and Officer Henning to testify over Sekula's objection, we must also evaluate whether the record supports a "showing of bad faith on the part of the prosecutor in the late designation and whether [Sekula] could reasonably anticipate that the witness[es] would testify although [their names were] not previously disclosed." *See Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.) (citing *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992)); *see also Martinez*, 131 S.W.3d at 29.

  a. <u>Bad Faith</u>

Reviewing courts consider three areas of inquiry when determining whether the State acted in bad faith:

> (1) whether the defense shows that the State intended to deceive; (2) whether the State's notice left the defense adequate time to prepare; and (3) whether the State freely provided the defense with information (e.g., by maintaining an open files policy, by providing updated witness lists, or by promptly notifying the defense of new witnesses).

*Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd) (omitted); *accord Martinez*, 131 S.W.3d at 29; *see also State v. LaRue*, 108 S.W.3d 431, 434 (Tex. App.—Beaumont 2003), *aff'd*, 152 S.W.3d 95 (Tex. Crim. App. 2004) (defining a willful act as one that is "done voluntarily and intentionally, with the specific intent to disobey the law"); *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002) (stating that evidence should not be excluded absent evidence the State acted in bad faith in failing to disclose the evidence or willfully failed to respond to the trial court's order under art. 39.14(b)).

Here, Sekula's case progressed from arrest to trial in a little over two months. The record indicates that on July 8, 2016, thirty-one days before the start of trial, defense counsel filed a plethora of discovery motions, including a request for the State's witness list. Within thirty days of the defense request, on August 8, 2016, the State filed its Witness List. Among other witnesses, the notice identified Stephens as an expert and Officer Henning as a San Antonio Police Officer. The record also indicates the State provided defense counsel copies of its file and the police report through E-Discovery. Based on the lack of any evidence that the State's failure to timely disclose was an intentional effort to deceive Sekula, we conclude the trial court did not abuse its discretion in finding the State's late designation was not the result of bad faith.

        b.      <u>Reasonably Anticipate</u>

We must also determine whether defense counsel could have reasonably anticipated that the State would rely on the testimony of either Stephens or Officer Henning.

(1)     Officer Henning's Nystagmus Testimony

Officer Henning's name was included in the discovery materials, specifically the offense report, provided to Sekula's counsel when he was appointed. *See Fox v. State*, No. 04-15-00618-CR, 2017 WL 96160, at \*3 (Tex. App.—San Antonio Jan. 11, 2017, no pet.) (mem. op., not designated for publication). As this court previously determined in *Fox*, Sekula could have reasonably concluded that the officer who conducted the field sobriety tests, the interview, and took the breath-alcohol specimen would be called by the State as a witness. *See id.*

In the present case, not only did defense counsel have a copy of the police report, but on July 20, 2016, defense counsel filed a Motion for Court to Take Judicial Notice of Nystagmus Causes Other Than Alcohol. By filing this motion, the trial court could have reasonably determined defense counsel anticipated the State would be presenting "an officer's testimony relating to nystagmus." We, therefore, conclude the trial court did not abuse its discretion in finding Sekula could have reasonably anticipated that an officer, and more specifically Officer Henning, would testify regarding nystagmus and the causes of nystagmus, including alcohol. *See Lemasuier v. State*, 91 S.W.3d 897, 900–01 (Tex. App.—Fort Worth 2002, pet. ref'd) (noting prosecutor's open file and witness's name in report in the State's file); *White v. State*, No. 2-02-143-CR, 2003 WL 865351, at \*3 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref'd) (mem. op., not designated for publication).

(2)     Debra Stephens Breath-Alcohol Testimony

Similarly, the police report and the discovery provided to Sekula's counsel included the breath-alcohol test results showing Sekula's breath tests exceeded the legal limit. Sekula's counsel could have reasonably anticipated that the State would call a witness to provide testimony regarding the Intoxilyzer and to explain the meaning of the test results. Moreover, even assuming that Sekula's counsel *prior to trial* was under the mistaken belief that the State was not planning

to present evidence of the breath-alcohol test results, the issue of the Intoxilyzer was discussed at some length during voir dire. In fact, Sekula's counsel asked the panel,

> If [the State] bring[s] you evidence of a breath test, will you make them provide— show that [the Intoxilyzer] provides trustworthy or reliable evidence that the blood-alcohol content was .08 or more at the time the person was operating the motor vehicle?

Without objection from defense counsel, the trial court gave the following instruction:

> Ladies and gentlemen, we're talking about the use of what the State calls scientific evidence, which may be a blood or a breath test. The State, in my understanding, if they have that type of evidence, will supply you with experts that will testify for you the workings of the machine, the reliability of the machine, that sort of thing.

The breath-alcohol test remained an issue through jury selection. Potential jurors were questioned, and the trial court even excused several potential jurors for cause, over the possible testimony regarding Sekula's breath-alcohol test. Assuming, arguendo, that prior to voir dire, Sekula's counsel was not anticipating the State would call an expert to testify regarding the Intoxilzyer, after the State's voir dire, and the trial court's instruction regarding the State presenting an expert on "the workings of" and "the reliability of" the Intoxilyzer, defense counsel should have reasonably anticipated that the State would call Stephens and Officer Hennings as expert witnesses. Moreover, after the jury was selected and released for the day, the trial court again asked both defense counsel and the State if there were any other issues the court needed to address. Defense counsel remained silent.

The following morning, Officer Henning testified, without objection, regarding his being called to the scene of an accident, his locating Sekula, his speaking to Sekula, and Sekula's statements to the officer. Only then did defense counsel object to Officer Henning's testimony regarding the horizontal gaze nystagmus test and Stephens's testimony as to the breath-test evidence.

The trial court questioned defense counsel as to why the question of expert testimony was not brought to the trial court's attention at an earlier time. After "four and a half hours picking a jury . . . you knew the State was going to put on breath-test evidence. We discussed it yesterday at length." Defense counsel asserted that based on the State's failure to properly disclose their expert witnesses, the defense did not know that the State "want[ed] to put on breath-test evidence. There's two other ways to prove this case." Like the State's contention that defense counsel was being disingenuous, the trial court noted, "Counsel, you're not telling the truth."

We note our analysis of whether Sekula could have reasonably anticipated that Stephens's testimony is truly a question of content—whether Sekula could reasonably anticipate the State would call a witness regarding the Intoxilyzer and the science of breath-alcohol concentration levels. In other words, whether defense counsel could prepare for trial, including cross-examination and any defensive issues. As the trial court explained to the jury, without objection from defense counsel, and two days before Stephens was called to testify, the State will "supply you [the jury] with experts that will testify for you the workings of the machine, the reliability of the machine, that sort of thing." We cannot conclude the trial court abused its discretion in determining Sekula could have reasonably anticipated that the State would present evidence of Sekula's Intoxilyzer results and the scientific explanation relating to breath-alcohol concentration levels on the human body.

Based on a review of the record, we conclude the record supports that defense counsel could have reasonably anticipated both Officer Henning's nystagmus testimony and Stephen's breath-test evidence. *See Branum*, 535 S.W.3d at 226; *Martinez*, 131 S.W.3d at 29.

Because the record does not support the late designation was based on action taken in bad faith on the part of the prosecutor, and the record supports that Sekula could have reasonably anticipated that Officer Henning would testify regarding the nystagmus test and Stephens would

testify regarding the breath-alcohol test, we conclude the trial did not abuse its discretion in allowing either Officer Henning or Debra Stephens to testify. *See Branum*, 535 S.W.3d at 226; *see also Martinez*, 131 S.W.3d at 29.

**B.     Trial Court's Denial of Sekula's Motions for Continuance**

Sekula next contends the trial court erred in denying his motions for continuance to allow him to prepare for Stephens's and Officer Henning's testimony.

*1.     Standard of Review*

"We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)).

*2.     Texas Code of Criminal Procedure Article 29.13*

Article 29.13 of the Texas Code of Criminal Procedure provides that the trial court may grant a continuance after trial has begun "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had." TEX. CODE CRIM. PROC. ANN. art. 29.13 (West 2006). To prevail, Sekula must show he was prejudiced by the denial of the motion. *See Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010).

Prejudice may be proven by proof of unfair surprise, an inadequate time to prepare for trial, or an inability to effectively cross-examine or elicit crucial testimony from witnesses. *See Dotson v. State*, 146 S.W.3d 285, 297 (Tex. App.—Fort Worth 2004, pet. ref'd); *Janecka*, 937 S.W.2d at 468.

*3.     Surprise to Sekula*

Sekula contends his motion for continuance was not urged prior to Officer Henning's nystagmus testimony or Stephens's breath-alcohol testimony because defense counsel did not

anticipate that the State would rely on the testimony of either a nystagmus or breath-test expert. Our prior analysis that Sekula could reasonably anticipate Stephens would testify regarding Sekula's breath-alcohol test and the results therefrom, and Officer Henning would testify regarding Sekula's horizontal gaze nystagmus test and the corresponding results, is applicable under an article 29.13 analysis as well. *See DuBose v. State*, 977 S.W.2d 877, 881 (Tex. App.—Beaumont 1998, no pet.) (concluding defendant could reasonably anticipate need for expert testimony to refute medical examiner's opinion on cause of death in autopsy); *see also Harris v. State*, 287 S.W.3d 785, 792–93 (Tex. App.—Houston [1st Dist.] 2009, no pet.), *abrogated on other grounds by Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009) (determining defendant should have anticipated, based on indictment, that State would attempt to prove defendant drove at an excessive rate of speed through lay or expert testimony).

The record does not support, and we cannot conclude, that the State's reliance on either Officer Henning or Debra Stephens was an "unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, [and Sekula was] so taken by surprise that a fair trial cannot be had." *See* TEX. CODE CRIM. PROC. ANN. art. 29.13. Sekula, therefore, failed to show any real prejudice by the trial court's denial of his motions for continuance or that the trial court abused its discretion in denying the motions. *See Gallo*, 239 S.W.3d at 764. We overrule Sekula's issues related to his motions for continuance.

After the State rested its case-in-chief, the jury was excused and defense counsel reurged his motion to suppress based on the State's failure to show Sekula was lawfully detained; the trial court denied the motion.

## MOTION TO SUPPRESS

### A.     Arguments by the Parties

Sekula contends that because no testimony was given regarding the officers' reasonable suspicion to detain Sekula, the trial court erred in denying his motion to suppress in violation of the Fourth and Fourteenth Amendments.

The State counters that Sekula failed to preserve error because he did not make a timely objection during the witness testimony.  And even if he preserved error, the testimony supported the conclusion that Officer Henning had a reasonable suspicion to detain Sekula.

Before addressing the merits of Sekula's argument, we must first determine whether Sekula preserved his complaint for appellate review.

### B.     Preservation of Error

Texas Rule of Appellate Procedure 33.1(a) mandates that for a party to preserve error, the defendant must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling.  TEX. R. APP. P. 33.1(a); *accord Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004); *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref d).  Because a motion to suppress is simply "a specialized objection to the admissibility of evidence," Sekula was required to present a "timely and sufficiently specific [objection] to inform the trial court of [his] complaint."  *See Thomas v. State*, 482 S.W.3d 235, 240 (Tex. App.—Eastland 2015, no pet.) (citing *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)); *Johnson v. State*, 171 S.W.3d 643, 647–48 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  "[T]o be timely, a motion to suppress must be presented before the evidence or testimony is admitted."  *Strehl v. State*, 486 S.W.3d 110, 112 (Tex. App.—Texarkana, no pet.) (citing *Weeks v. State*, 396 S.W.3d 737, 740 (Tex. App.—Beaumont 2013, pet.

ref'd)). "If the jury hears the evidence before the trial court rules on the motion to suppress, the motion is forfeited." *Id*. (citing *Weeks*, 396 S.W.3d at 741).

## C.      Sekula's Motion to Suppress

The clerk's record contains a motion to suppress filed by Sekula on July 1, 2016. The record does not contain a hearing on Sekula's motion or a request to set Sekula's motion for a hearing.

On the morning of August 9, 2016, the trial court heard all outstanding pretrial matters; the jury was selected that same afternoon. After the jury was released for the day, the trial court again asked counsel if any motions needed to be heard. The only item raised by defense counsel was his prior objections, addressed in Sekula's motion in limine, to statements in a videotape.

The following morning, August 10, 2016, prior to the jury being sworn or opening arguments, and outside the presence of the jury, the attorneys discussed the State's presentation of a video of Sekula from the night in question. Defense counsel conceded the admissibility of the video, in its entirety, "*[i]f* he was under arrest when the officer gets there." (emphasis added). Although there is no mention of Sekula's motion to suppress, and defense counsel did not request a hearing on his motion to suppress, defense counsel asserted, "I can make that argument to the Court at that time [in the trial]."

The trial court, however, inquired further. Defense counsel opined that when Officer Henning arrived at the scene, Sekula was already under arrest. Because Sekula was under arrest, any statements made by Sekula were subject to that custodial interrogation. The State countered that Sekula was not under arrest, he was not physically restrained, and *Miranda* did not apply. The trial court "ruled' as follows:

> Trial Court:      Well, for purposes of what we're doing, "A," my ruling initially, right now, is going to be that he was not, quote, legally under arrest at the time that all these questions and answers and

- 16 -

> whatnot were given. But I will continue to run your motion with the trial so that I can get all the testimony from the officers we don't have in front of us at this time, and I'll make a second ruling either to confirm what I'm doing now and the ruling I made or to change it. If I change it, then I will advise the jury, instruct them that they have to disregard all these statements and stuff. I don't think that's going to happen, but I'm giving you as good a shot as I can give you. Fair enough?

Defense Counsel: Fair, Judge.

The jury was brought into the courtroom and the trial court administered their oath. After opening arguments, the State began presenting its case-in-chief. Over a two-day period, the State elicited testimony from two officers, a forensics scientist, and two witnesses. After the State rested, and outside the jury's presence, Sekula's trial counsel "renew[ed]" his motion to suppress based on the State's failure to prove lawful detention. The trial court denied Sekula's motion to suppress.

Sekula contends the trial court erred in failing to suppress his statements, all observations by Officer Henning, and the breath-alcohol concentration test presented by Stephens. Sekula, however, did not object to the evidence when the statements were presented, when Officer Henning testified, or when Stephens testified. *Contra Peña v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) ("A complaint is timely if it is made 'as soon as the ground of objection becomes apparent.'") (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)). Instead, Sekula waited until after all the witnesses testified and the witnesses were excused. "Requiring a timely and specific objection is intended to afford the trial court the information and time to make its ruling and to afford opposing counsel an opportunity to deal with the objection or to provide alternate evidence." *Strehl*, 486 S.W.3d at 112; *accord Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009); *Aguilar v. State*, 26 S.W.3d 901, 905–06 (Tex. Crim. App. 2000).

Because Sekula waited to urge his motion to suppress until after the jury heard and saw the objectionable evidence, he failed to present his motion to suppress in a timely manner and obtain a ruling by the trial court. *See Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012) (concluding that because the "complaint was made after the testimony of the State's final witness . . . [the] request was clearly not timely, . . . [and] the requirements for preservation were not met."); *Norman v. State*, 480 S.W.2d 659, 660 (Tex. Crim. App. 1972) (concluding that objection "first presented to the court in the form of a motion to suppress while the defense was presenting its case, was clearly not timely and, consequently, presents nothing for review."). We agree with the State's contention that Sekula's motion to suppress was untimely, and as a result, and "the requirements for preservation were not met." *Brewer*, 367 S.W.3d at 253. We, therefore, overrule his issues related to his motion to suppress.

## ATTORNEY'S FEES

In his last issue on appeal, Sekula contends the evidence is legally insufficient to support the imposition of any attorney's fees under article 26.05(g)) of the Texas Code of Criminal Procedure. Sekula challenges the assessment of $500.00 in attorney's fees. He asserts the trial court found him indigent for purposes of trial and this appeal, and there is no evidence to support a material change in Sekula's financial circumstance.

The State does not challenge Sekula's last issue on appeal and requests, "this court modify that judgment to delete the assessment of attorney's fees in the judgment and order the district clerk to delete the attorney fees from the bill of costs." "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2017); *accord Dieken v. State*, 432 S.W.3d 444, 446

(Tex. App.—San Antonio 2014, no pet.); *see also Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013).

Here, the record indicates the trial court determined Sekula was indigent and appointed counsel to represent Sekula on June 11, 2016. The record does not contain evidence of a material change in Sekula's financial status. *See Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p)) ("[A] 'defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'"); *Ramirez v. State*, 432 S.W.3d 373, 377 (Tex. App.—San Antonio 2014, pet ref'd).

Because there is no evidence in the record to support the imposition of attorney's fees, and there is no evidence of a material change in Sekula's financial circumstances, the trial court erred in assessing appointed attorney's fees against Sekula.

## CONCLUSION

Because the trial court erred in assessing attorney's fees, we reform the judgment to delete the assessment of the attorney's fees against Sekula. Having overruled all of Sekula's other issues on appeal, we affirm the judgment as reformed.

Patricia O. Alvarez, Justice

DO NOT PUBLISH